Thank you. Good afternoon. Nice to see you. Thanks for getting here early. We appreciate it. Okay. Our first case this afternoon is People v. Del Monte Thomas. That's case number 4140778. For the appellant we have Adrienne River for the appellant Amelia Burgess. Is that correct? Yes. Very well. You may proceed. Good afternoon, Your Honors. Counsel. I plan to address Issue 1A and if there's time to go on to Issue 2. Issue 1 being the argument that the state did not prove that the Miranda waiver was valid or that the confession was voluntary and 2 being arguing that juveniles need to be represented by counsel. The detectives here read a form to Thomas and included a waiver paragraph. The detective did not ask Thomas if he wished to speak. He did not ask if he wished to sign the initial of the waiver, but he was ordered to. The detective had the sheet in front of him and pointed to the line next to the waiver paragraph and said, initial here. Typically when you see these recordings, the police will ask the suspect, knowing these rights, do you wish to speak? That didn't happen here. The law requires a clear manifestation of desire to waive rights. That didn't happen here. For example, he didn't start talking spontaneously. He didn't make an oral waiver. Okay, I want to talk to you. After they got his initial on the paragraph, they launched into the interrogation. So under those circumstances, the waiver wasn't valid. Did he tell them the initial here if you understand it? They asked if early on do you understand your rights and the youth officer talked to him for a little bit, but then the detective just pointed to the line and he said initial here. He didn't say initial here if you understand it? He didn't say that. He just said initial that one and he complied immediately. The alternative of the confession was involuntary. At the beginning of the recording, you see Thomas asking the detective, did you contact my aunt? And he names her specifically, so it's implied that he even had told them about her before. So this is the first, if not the second, request for the aunt. The police do not try to call the aunt, but the youth officer leaves a message for the mother on the home phone. He doesn't attempt to call her on the cell phone, so really he made very little effort to contact the mother. And I also note that call wasn't made immediately upon his arrest, which the statute talks about. The time of the arrest wasn't clear, but it was somewhere after 3.20 and the officer isn't contacting the mother until 4.40. Then they don't wait a whole long time before beginning the waiver reading and then the ultimate interrogation. And the youth officer asked a few questions, but he stood there while the detective told Thomas to sign that waiver paragraph and then he left. So he didn't act as a concerned adult. And then there's a break in the interrogation. Thomas asked if they had contacted his aunt, so this is a second, if not a third, request. So it's pretty clear. I want to talk to my aunt, but nobody does anything about it. What I think is particularly egregious is then when the mother calls, she says, I'm out of town, can't get there until 9, I carpooled, and I want to speak to my son, and the detective says no. And at the hearing, he testifies, well, I couldn't verify her identity. Well, sure he could have. He could have put Thomas on the phone. He could have asked Thomas, what's your mother's cell phone number? He asked for that later, but he doesn't do that. So the course of conduct, I think, here leads to the conclusion that there was really an intentional effort to talk to Thomas before he could communicate with his relative, be it the mother or the aunt. I mean, the purpose of that statute is to allow a parent to confer with their child before the interrogation begins. And I would argue that that purpose was thwarted here. I cite case law how the absence of a concerned adult is particularly relevant when the child asks to speak to a concerned adult. And there's a case saying that when the police prevent a parent, in that case they were present at the police station, they prevent that parent from speaking to the child, that the confession is to be presumed involuntary. And I think it should apply in this case, too. I don't know why that's a special situation that the mom calls on the phone and they can't allow that communication to occur. Also, one of the officers testified in certain circumstances they've had the child wait with the youth officer until a parent comes. He didn't explain what the circumstances were, but obviously they didn't do that here. Sergeant, I'm going to get back to my initial question of you because I looked in your brief at page 8. Okay. And there you quote Detective Hendricks as saying, if you understand all these initials, each one of these little lines here, and then the client initiated them. Right. That was what I asked you. Oh, I'm sorry. Yes, they did before ask him to initial the Miranda rights, but he didn't ask him specifically, did he understand the paragraph about waiving the rights. Do I understand? I agree that I wanted to speak to the police. So then he's on page 9, just initial that one. And there's no discussion about that particular part of the form. So I'm sorry if I was misleading on that. Didn't intend to be. Also, another factor in the involuntariness is that the second detective acted in an intimidating manner. You know, he hit the table, he raised his voice. Even before that interrogation, Thomas initially was denying that he was involved, and they basically wore him down. There wasn't a reason why he should admit his involvement. They wore him down. I think the techniques were particularly effective. He's a susceptible juvenile, and they worked very quickly. So the police conduct in this case, preventing communications between the child and the relatives, directing him to sign the waiver, and using those coercive interrogation techniques, shows how juveniles can be manipulated into waiving their rights and involuntarily confessing. And that's why I'm arguing in Issue 2 that juveniles should be represented by a counsel. I mean, a common knowledge, even apart from, you know, research studies, is that juveniles, adolescents, lack mature judgment. And it's a biological fact of their brain development, and that's reflected in a lot of different civil statutes restricting minors from engaging in activities involving the ability to reason, such as serving on a jury. And so the criminal law is kind of catching up with the science. We see that with the trend in sentencing law, recognizing how juveniles are different. And I guess I just want to emphasize, I thought it was very eye-opening in the research study I did cite, that most juveniles have a fundamental misunderstanding of what it is to have a right. Something that we would take for granted, but that the majority of them believe that if they exercise a right, I can't be penalized later. And that's a nuanced understanding, and it is not reflected in the Miranda warnings. And I would argue without this understanding, how could a waiver of rights be intelligently made? I mean, if a juvenile can't understand that crucial concept of what it is to have a right, how can he waive his Miranda rights? I mean, in contrast, we don't even trust him to enter into a simple contract, but we are going to allow him, without the guidance of counsel, to waive his rights. And I argued in the brief that under the due process and the self-incrimination provisions of our Constitution, those give authority to hold that counsel is necessary for juveniles recognizing their cognitive deficits. So I'd like to reserve a little time for rebuttal unless there are other questions. I don't see any, but you will have rebuttal. Thank you. Thank you. May it please the Court, Counsel. Good afternoon. My name is Amelia Burgess, and I'm appearing today on behalf of the people of the State of Illinois. This particular case today, in the briefs, the defendant has raised four separate issues. The first is whether or not the defendant properly waived his Miranda rights. The second was whether or not the confession was voluntary. The third deals with whether or not there should be a rule that all juveniles should be represented by counsel when under investigation for a crime of a serious nature as was at hand in this particular case. The fourth and final issue is with regard to sentencing and whether or not in this particular instance there are any concerns with the Supreme Court's decision in Miller and whether or not they are implicated in the sentencing here. The first two of these issues are more straightforward in their analysis because they simply require the Court to look at the legal standard and the facts to determine whether or not the defendant was indeed deprived of any of his rights. The second, two, the third, and fourth issues are a little more broad in their scope in that they are looking at whether or not there are constitutional implications and the defendant is asking this Court to take steps that have never been taken by the courts before in finding de facto rules or that there is a necessity of a per se rule for counsel. And that raises other questions about whether or not this is the most appropriate forum for those particular questions or if they should be addressed elsewhere. Because defendant focused on the first two of these issues, I will begin my argument there. With regard to the Miranda rights and the waiver there, the trial court judge perhaps said it best that the defendant was carefully Mirandized. The officers read to him his rights. They asked, do you understand these? And if you understand these, please initial here. There was also a youth officer present who, not just present, but who actively engaged the defendant. So when he asked the defendant, do you understand that? Do you know what an attorney is? And when the defendant said yes, he said, tell me, what is an attorney? To make sure that there were no questions, that the defendant was engaged, that he understood what was happening, and that he had the capacity to recognize what it is he was doing. Does that mean he had a perfect understanding? No, possibly not. But that is not what the law requires. There are many adults who do not have a perfect understanding of what it means to waive their Miranda rights. Nonetheless, the law says they have a right to do that. And in this particular instance, the defendant was carefully walked through those steps, and all of his rights were fully safeguarded. Did the detective actually say to him and make him repeat the words, I want to talk to you? No, they did not. And they are not required to do so, so long as the record in its entirety is clear that the defendant knowingly and intelligently waived the rights that are guaranteed to him. In this particular instance, the trial court believes that the defendant was fully and properly Mirandized. There are concerns raised by a defendant about the extent and the nature to which the state or the investigating officers are required to contact parents. There, the statute is somewhat, it doesn't require much. It requires that the state contact a parent, which is what happened in this case. The officers reached out to and eventually were able to speak with the defendant's mother, who was unavailable. In the absence of the mother, the detectives did what they are legally allowed to do. They made sure a youth officer was present so that there was a concerned adult present at all times. And this is where it is somewhat distinguishable from some of the cases cited by a defendant, where the youth officer either was not present, or where the youth officer did not in any way engage in the questioning or protecting the youth involved, or where the youth officer was actually part of the investigation. And there, the courts have stated great concerns with whether or not the youth officer is doing what he or she is required to do. Nonetheless, the court has said that that factor alone is not determinative. We look at the full picture. And the full picture here is that the defendant was a youth of, he was a more advanced aged youth. He is a so-called older youth, and as such, had better understanding than perhaps a younger individual. That he had attained an educational level of a junior in high school. That he had a stable family. And that at no point in time during the questioning did he exhibit any confusion or inability to understand what was going on. And that gets us into the second aspect of the defendant's argument, which is whether or not the confession itself was free and clear of any doubt, or if it was the result of any coercion or improper techniques. And here, the tape speaks volumes. Watching it, the detectives are calm. They are not in any way belligerent. They do not badger him. They do not do anything that would rise to the level of screaming or yelling or harassing. At one point, one individual does raise his voice. But in the grand scheme of things, that was minimal. And was understandable in the circumstances. And he had every right as an investigating detective to say to the defendant, I know that you are not being truthful to me. I think it's important to keep in mind here that the detectives were dealing with a situation where they had someone who had just been shot on the streets of Decatur. And they had three individuals in custody who they believed might be responsible, but they had a very real concerning need to make sure they had the right people. So for them, time was of the essence. And the amount of time it took in order for the defendant to ultimately confess to his involvement in the shooting was comparatively minor. In fact, very little time. The entire time the questioning went on was in a span of 24 minutes. Less time than we will spend arguing here today about this case. So when compared to other cases where the courts have found that a confession was improperly obtained, the facts of this case are dramatically different. In those particular cases, we were dealing with situations where a minor of a very young age was questioned for extended periods of time, denied the ability to use the restroom, denied the ability to eat, denied the ability to even put on regular clothes, taken out of his or her home in the middle of the night. None of that happened here. The defendant was detained on a street when he was running from the police officers. He was taken to the police station. There was relatively little or minimal delay, all things considered, before he was actually questioned by the officers. It was during daylight hours, and it was a relatively short period of time. So when looking at the totality of the circumstances, the trial court in this particular instance was correct. This confession was properly obtained, and there is no basis at this point in time for the court to say that it constituted error on the part of the trial court. Have they ever questioned him prior to trying to contact his mother? The first contact with his mother, so Brian Carney, the victim in this case, was shot around 3 o'clock p.m. The defendant had preliminary questions, what's your name, address, those very preliminary questions and fingerprints taken at 14 p.m. At 4.40, the initial call went out to the mother. And then at about 5.20, 5.22, Officer Wrigley informed the defendant that he could not reach the mother and that they would be moving forward, but that Officer Wrigley would be there serving as his advocate and as the youth officer and explaining to him that he was there in his mother's stead. And as a result, the fact that they could not get ahold of the mother was unfortunate, but the practice that the police officers then moved forward with was consistent with what was required of them under the Illinois law. And the fact that... So they have no time requirements, like they tried to reach mom, they can't get ahold of mom, they don't have to wait an hour, two hours, a reasonable amount of time, ten minutes, doesn't matter? That is correct, Your Honor. No, as rational people, I'm sure we would all agree that it would be desirable that they give some period of time. What is appropriate is probably dependent upon the circumstances. In this particular instance, as I noted, there was some degree of urgency among the police officers to make sure they had the right individuals who were responsible for this very serious action. If not for that fact, perhaps the preference would have been to wait longer, and perhaps the police officers would have done so. But given the circumstances, they did wait a period of time. They were unable to reach her, and when they did ultimately reach the mother, she was unavailable to be there in a quick and timely manner, so they moved forward. With regard to the third and fourth arguments, I'll touch on those briefly. With regard to the third argument, the defendant is requesting that this court find a per se rule that all juveniles should be given an attorney when accused of a serious crime and being questioned by the police officers. This is an area where the courts have been reluctant to intervene, because it is an area where the legislature has been more active, and more looking at this particular issue, and for good reason. This requires a large number of factors to be considered. In fact, the legislature has made some changes. As both parties, I believe, noted, the Juvenile Court Act does require minors to be provided counsel in some situations. If, in this particular instance, the defendant had been younger, he would have been provided counsel. This is more of a broad public policy issue, looking at what society deems to be appropriate. The legislature has already stepped in there and made that determination through the public forum and discussion. As a result, this is an area where the courts are certainly welcome to step in if there were a constitutional impediment, but it is an area where I would imagine the legislature believes that it has fully looked at the scope of this and come to a rational decision that best balances the needs of both the juveniles who are accused of crimes, as well as individuals who are victims of crimes, as well as the broader societal implications and what we as a society would like to see. As a result, there are no arguments made by defendants in this particular case that the trial court did anything wrong, just a desire that things be done differently. Again, the legislature has spoken in this area. That is similar to the fourth and final argument with regard to sentencing. There, the legislature, in response to the United States Supreme Court's ruling in Miller, has stepped in and has made changes with regard to how sentencing of minors is accomplished to avoid the constitutional implications of a sentence of life without parole. It is worth noting that the United States Supreme Court has not abolished a life sentence without the possibility of parole for a juvenile. They simply have said that they want to make sure the courts are taking into account the special circumstances that may be present when a juvenile is responsible for a crime. In this particular instance, as has been noted in the state's brief, those factors were taken into account. Even though this particular instance took place before Miller and before changes to the Illinois Criminal Code, the trial court did take into account factors that are now required. The court noted that the defendant came from a stable, good family. The court noted the defendant's educational level. The court noted the defendant's demeanor and found great concern with the fact that at no point in time did he exhibit anything that resembled remorse. He did not accept responsibility for his actions. So as a result, the court at that point in time said even though it had the discretion, even under prior sentencing scheme, to issue a lower sentence, it did not believe it was appropriate. The court exercised its discretion, which is still allowed under the current state of Illinois law despite all of these changes. And so the state's argument is twofold here. Number one, even if the court were to find that this was a de facto life sentence, the trial court did what it was supposed to do prior to entering that sentence. And as a result, Miller has not been violated. The second is that even the second prong of the argument, though, is that the sentence entered is technically not a life sentence. Now the state of Illinois is a state that has never adopted a per se rule when it comes to life sentences. Some states may choose to do that and define that clearly. Illinois has not done so and likely for good reason because as the briefs point out, a life sentence is highly variable depending on the person and is almost impossible to predict. How long will the defendant live? That is a question that cannot be answered. We do know that according to the life table data from the CDC, that this particular sentence was not a life sentence because his life expectancy at the time he was sentenced exceeds that amount. And prior Illinois courts that have dealt with this issue at the appellate level have stated if it is not a full life sentence, if it does not exceed that, it is not a life sentence. The defendant did cite to a recent Supreme Court case in his reply brief, and I did want to just briefly touch on that because it was in the reply brief, in the People v. Reyes case where there was a finding that a sentence was a de facto life sentence. That is a very different circumstance because there the 16-year-old defendant was sentenced to 97 years and would be 113 at the end of that full sentence. So it's a very different scenario than what we're facing here where the defendant would be in his early 70s. Was that sentence the minimum sentence allowed by law based upon statutory factors? Your Honor, if I remember correctly, under People v. Reyes, that sentence was the minimum allowable at the time. It would not be the minimum allowable under current law, I believe because of those changes. But it is worth noting that even under the current sentencing structure and the changes to the statute, the defendant in this case was looking at a minimum of 40 years. That under the new statute, it actually says a juvenile who is convicted of first-degree murder will serve no less than 40 years. So the legislature looked at this, understanding that Miller could change the landscape, and still decided that juveniles who are convicted of this type of crime will serve a significant portion of their adult lives in prison, if not the entirety of their adult lives in prison. And the legislature believed that was appropriate so long as the trial court took into account the additional factors that we've discussed. And again, in this particular case, the trial court did take into account those factors, and believed based on all of the circumstances, this particular defendant required a lengthier sentence, even if the judge had the discretion to offer a lighter sentence. As a result, with regard to all four of the arguments made by defendants, the state would respectfully request that this court uphold the trial court's findings, both with regard to the propriety of the statements, the waiver of Miranda rights, and with the sentence imposed. And if this court has no further questions... It doesn't appear to be, so thank you very much. Any rebuttal? Yes. Okay, great. On the Miranda issue, the U.S. officer didn't address that Thomas was required to sign the waiver paragraph. The counsel says that the record in entirety supports the conclusion that the waiver was valid, but she doesn't refer to a single fact to support that. And as I said before, he didn't speak voluntarily. There was no indication that his waiver was voluntary. I think she also misspoke when she said a concerned adult was present at all times. Well, he wasn't literally present at all times, and he was not a concerned adult, acted as a concerned adult. The statute for notification requires a reasonable attempt, and it's not reasonable that they waited in an urgent situation, but they didn't act with expediency in trying to contact the mom. They could have called her en route to the police station. There's a case that held that you waited for an hour, did not satisfy the requirement of immediate attempt to contact a parent or other concerned adult. And even if the police technically complied with that statute, the fact remains they would not let his mother speak to him. The counsel did not address that. So special care was not taken here. The detectives weren't calm. They were persistent. They wore him down. He wanted to talk to his aunt. They prevented the mother from speaking to him. Under those circumstances, the waiver was not valid, and the confession was involuntary. So I ask this Court to reverse the denial of the motion to suppress, remand for further proceedings or an alternative, allow the filing of a new motion to suppress, and if the denial of the motion to suppress is affirmed, we ask the Court vacate the sentence and remand for re-sentencing. Okay. Thanks to both of you. Thank you. The matter is submitted, and the Court will stand in recess.